As previously announced and the times will be as allotted to counsel, the first case today is number 181773 and number 181777, Carlos Mendez-Nunez and Thomas Rivera-Schatz v. The Financial Oversight and Management Board, et al. Good morning, Your Honor. Good morning. My name is Claudio Oliva and I appear on behalf of appellants on case 181777. We will be served, if the court pleases, two minutes for rebuttal if necessary and we have... Yes, you may have two minutes. Thank you, Your Honor. And we had a conversation with a fellow counsel, Roldan, and he had agreed that if the argument on our part with the court extends beyond the 11 minutes that we have, we may encroach at two minutes of his time if the court allows it. That's between the two of you. That's fine with us. Thank you, Your Honor. May I please the court? Please. Your Honor, this case is before this court in an appeal of dismissal under a motion to dismiss under federal rules of civil procedures 12B, 6 and 1. The standard of review is the norm and so this court must make a fresh reading of the complaint when evaluating our appeal. We respectfully submit that the allegations in the complaint sufficiently delineate a set of facts that suggest more than a sheer possibility that the board had acted in violation of sections 204, 201 and 202 of PROMESA. The process set in those sections are the residues of the democratic government PROMESA took away when the board was imposed. The allegations in the complaint, if read as a whole, show that plaintiffs had alleged enough facts to raise possible claims that defendants acted illegally. Counsel, the district court basically divided this into three baskets. Instead of making a generalized argument, could you address your comments to each of the three essential holdings that were made below? Oh yes, Your Honor. First, with regard to the dismissal of count one, when we asked the court to issue a declaratory judgment, determining that the board had overreached in trying to force public policy on the legislature. A reading of the complaint showed, and the facts supported therein, that when the board approved a memorandum of understanding on May 30th, which appears at appendix pages 167 and 68, requiring that the legislature submit for prior approval any legislation related to the repeal of Law 80, it encroached in the legislative prerogatives of the Legislative Assembly of Puerto Rico. Because under Section 204, that right to examine, agree or disagree with enacted laws comes once the legislature has acted pursuant to its powers and authority, granted by PROMESA, not the Constitution of Puerto Rico. Because Section 204, again, gives the Legislative Assembly the right to enact legislation to in fact comply with Section 201BK of PROMESA, which recognizes the need for the authority of the board to include in the fiscal plan those recommendations that are adequately approved. And the only way a recommendation that requires legislation is adequately approved is after it has passed the process set in Section 204 of PROMESA. Therefore, by acting in that way, definitely the board encroached and used stronger tactics against the Legislative Assembly. The same happened in the June 4 letter, which is at pages 45 and 46 of the appendix. When the board wrote in that letter that the legislation that the Legislative Assembly had to approve had to be a total repeal or nothing else, it again encroached into the Legislative Assembly's authorities, extended by PROMESA under 204, to examine those recommendations of public policy and issue its vision or version of that recommendation pursuant to the process set therein. At the same time, the court also dismissed the complaint based on the lack of jurisdiction. Because the court argued, or supposed that Section 104, I'm sorry, Section 106E of PROMESA precludes the court for entertaining challenges to a certified plan or project. And the court is right in as much as the plaintiffs were challenging the merits or rationale of the certification, but we were not. The plaintiffs were challenging the deviation by the board in the process set by PROMESA, which is a clear mandate of Congress on how the fiscal plan is approved and the budget. PROMESA Section 5B defined a compliant budget as that which is prepared in accordance with the applicable fiscal plan. By June 30th, 2018, the only applicable fiscal plan was the May 30th fiscal plan. Because the June 29th fiscal plan was approved in violation of Section 201D. When we read the letter of June 29 sent by the board to the governor and the legislature, we can see that that letter is conclusive in the fact that the board advises that they have already You said the district court was wrong on its 106E ruling. I have understood your argument to be that that wasn't the claim you were making, that the claim you were making was not a direct attack on the fiscal plan, but an attack on the process. Exactly. Okay, so if we think that your complaint actually was a direct attack on the fiscal plan, are you conceding the district court was correct? Well, you are. I know it's a difficult question. If you make a plain statement like that, certainly I must agree that yes, but the point is that the challenge to the plan comes attached to the process followed by the board in imposing a June 29th plan and using that plan to measure the budget approved by the legislature on June 30th. Well, the district court goes on to say, well, to the extent it's a direct attack on the fiscal plan, that's barred, but to the extent it's not a direct attack and appears to be an attack on process, I'm going to assume it's not barred by 106 and address it, and then she finds that you failed to state a claim. Okay, so now can you address that aspect of the ruling? Yes. Yes, Your Honor, if we take a look at the allegations of the complaint at pages 26 through 28 of the appendix, allegations 53, 54, page 20, we directly point out the deficiency of the process followed. We disagree very respectfully with the district court's appreciation of the allegations because the standard is not that we have to make a perfect description of the facts that support our claim. And the general allegation is sufficient to support under this scenario the denial of the dismissal presented by the defendant. I don't understand the argument. You do give specific facts. You point to the May 30th memo of understanding. You point to the June 4th letter. You point to about half a dozen different documents in the record, and the district court, considering those allegations, held that they were insufficient. So what is the argument you're making? That there was a limited reading of those documents. We understand that those documents really represent a clear behavioral part of the board that departs from the strictures of PROMESA. PROMESA is not there for the board to choose to follow because otherwise the Congress would have just appointed the board and said, now rule Puerto Rico as your priest. So it established a process that must be followed to accomplish the goal the Congress empowered PROMESA to accomplish. Inherent in your argument seems to be a notion that the process is endless of going back to the legislature to see whether it is going to behave in conformance with the ultimate fiscal goal. So to offset my concerns that that's inherent in your argument, can you tell me precisely in this process where you think the board did not comply with the requirements? In regard with the approval or certification of the fiscal plan, section 202B. Temporally. Are you saying after the agreement was reached with the governor and then the legislature did not comply with the agreement the governor had reached with the board? Are you pointing to the period of time after that? Yes, Your Honor. Are you pointing to the period of time before that? No. For the violation as to section 202 is June 29th. That's the threshold moment. That letter of June 29th when the board clearly stated that it had already determined that it would amend the fiscal, adjust the fiscal plan. It would revise the fiscal plan. The revision of the fiscal plan Congress established a process to do that under section 202D. It did not let, it's not a voluntary unilateral process that the board can take over and just approve a revised fiscal plan which is what it did on June 29th, 2018 when it sent that letter without a definite timeline to respond to it and with a clear message that it had already decided. Okay. Thank you. You've answered my question. Thank you, Your Honor. Good morning, Your Honor. Your Honor, Juan Gonzalez on behalf of plaintiff appellant Carlos Mendez Nunez and also representative of Puerto Rico. Now, our complaint was dismissed by the district court first because they found that there was a lack of subject matter jurisdiction. Second, the provision of section 106E asserted that the board actions were within the powers conferred by PROMESA. Now, from our point of view, and not to repeat brother's counsel or leave arguments, we submit that there, from our perspective, there is one main issue in question. And that is, did the oversight board have the authority in law to refuse to certify the budget approved by the Puerto Rico legislature and signed by the government in accordance to the constitution of Puerto Rico? Only, and I stress only, because the legislature refused to repeal law 80. That, from our point of view, is the main issue as to why we are here today. There should be no controversy that the reason of why the oversight board refused to certify the government budget was that they wanted the repeal of law 80, and very important from our point of view, that they wanted to be approved retroactively. Now, the board has the authority to make the recommendation, but it has no authority to retaliate against the Puerto Rico government. Counsel, as I understand it, the board initially, which is charged with Congress to bring an end to the fiscal disorder in Puerto Rico, to estimate revenues to require reduction of expenses, that the board made a specific finding about the effects of law 80. And it projected that this was going to, if law 80 did not exist, the commonwealth would have a great deal more money because of the discouraging effect of law 80 on businesses coming. Therefore, it used that as one of many devices that it recommended Puerto Rico follow. Law 80 is contrary to the rule in most states of outwill employment for initial employees, and this court has had any number of law 80 cases. All right, so the legislature then, despite this recommendation, including a recommendation, if you will, from the governor, chooses not to repeal law 80, as had been suggested as an appropriate fiscal measure for the commonwealth. Okay, now, your argument is that it's against PROMESA for the board to take actions like this. The board, in the end, has to reduce the budgets. It no longer has in the fiscal plan repeal of law 80. You all made your own choices about that. So I'm having a little trouble seeing how this violates the intention of Congress. If I may, Your Honor, first of all, the budget that was approved by PROMESA is larger, is bigger, than the one that the government had approved. Second... How is that pertinent? The budget that was approved... No, no, not the facts. How is that pertinent to the question I ask you? Because if they have to reduce and make savings, if they come with a budget that is bigger... There are a number of moving parts in the recommendations that were made by the board initially. Law 80 was not the only thing that was at issue. Yes, Your Honor, we know that. Okay, so move on to your next argument, unless you have an answer for it. Okay, Your Honor, in respect to law 80, the board states that Puerto Rico should be a state under which employment is undismissed and is freewheeling. It can be dismissed for any reason. Now there are only Puerto Rico and another state that has a law 80. The other states are similar to the one we have. But if they come with an argument, and it's an argument that I can say it has some validity. That if we repeal law 80, persons that want to invest in Puerto Rico will be more motivated because we don't have the law 80. So that can say that will bring more jobs to Puerto Rico. Okay, you agree that's a plausible premise for the board. Yes, I do. Now, what the legislature said, is that true? Although they said it, but they didn't present any facts to prove that. But let's say for this argument that that's a fact that is true, that if we eliminate law 80, more jobs will come to Puerto Rico. I don't think the issue for this court is whether that fact is true or not. Let's move on. Get to the point you'd like to make. Then the legislature presented a proof that law 80 be eliminated prospectively. Why? Because if you're saying that the reason why we have to take away law 80 is in order for new jobs to come, then let's say, and let's approve, that all those new jobs that come to Puerto Rico from now on, they won't be, they don't have a law 80. All right, this appears to be an argument that the board's position is irrational, and if it's irrational, then it falls into a different category, and the board cannot adopt that position. Well, is it that it's something more than irrational? It says that it has no reason whatsoever, because the reason to promise that, as you stated clearly. Aren't companies leaving Puerto Rico as well, and hasn't that been the pattern for the last 20 years? Yes, they have. We've heard a lot about the diaspora from Puerto Rico and the horrible effect it has had on the economy there. Yes, Your Honor, but companies that leave Puerto Rico, they do it because of fiscal problems, they do it because they find a better fiscal opportunity in other countries. They have never, have never been an argument that a company leaves Puerto Rico because of law 80. Law 80, the only thing that law 80 does is that it prohibits wrongful discharge, and no one should be against giving the employees that are wrongfully discharged an opportunity to have some kind of compensation. You know, it really, these policy choices are not for the court to make. I understand that, Your Honor. The question is the allocation of power under the PROMESA statute, and what powers were given to the board, and what powers were reserved to the legislature which were not inconsistent with the powers given to the board. I mean, that's clear under PROMESA. We state that the reason articulated by the board for law 80 to be repealed was the creation of new jobs. Then the answer of the legislature was, if it's the creation of new jobs, we'll repeal law 80, but we will do it prospectively, because they never argued that had nothing to do with the employees. And therefore, what does that say about the allocation of power between the board and the legislature? Because... That you disagree with their recommendations is quite evident, but how does that go to the allocation of power? Because when the board stated that they wanted law 80 to be repealed retroactively, and if the legislature refused that recommendation, they would not approve the budget. That, Your Honor, I believe is completely an action that is not authorized by PROMESA for the board to do. Okay. Are you saying that there's a difference between it was not authorized by PROMESA and it is prohibited by PROMESA? Right. So you're saying it was not authorized. You are not saying it's prohibited. Well, Your Honor, the PROMESA... Answer the question. I will, Your Honor. It's a combination of what is prohibited and what is not authorized, because the PROMESA is clear that the board has no authority to amend or to repeal any law, the inassistance previous to the enactment of PROMESA. It doesn't purport to do that. That choice was left to the legislature. Right. And if they go to the House and the Senate and they say, we recommend this, which is a valid recommendation, the reason for this is that if you repeal law 80, it will hurt Puerto Rico because new jobs will come. Now, if the House and the Senate said, well, if that's a valid reason, we'll do it. But no one has stated any reason why it had to be retroactively. The issue here from our point of view is the way they wanted law 80 to be repealed. I'm trying to put this into the legal framework of the issues before us. I understand that you have just made an argument that Congress did not authorize the board to make recommendations which it hoped the legislature would follow and articulate there would be consequences if the legislature did not follow it. Have I got your argument? You have it right, Your Honor. Okay. Thank you. Thank you, Your Honor. Thank you. Counsel. Good morning, Your Honors. May it please the Court, my name is Timothy Mungove and I'm from the law firm of Pascual Rose. I represent the Oversight Board Defendant Appellees. The district court properly dismissed the complaint for the following reasons. First, count one fails because the board did not force the legislature to enact labor reforms. Second, count two fails because PROMESA section 106E precludes plaintiff's claim that the board improperly refused to certify the legislature's June 30 budget. Three, count two also fails based on plaintiff's claim that the legislature's June 30 budget was compliant with the May fiscal plan, not the June fiscal plan. And last, PROMESA section 204 is irrelevant to the issues on this appeal. Count one fails to state a claim for declaratory relief because there is no case for controversy. The board did not force the legislature to enact labor reform. In fact, the legislature did not, in fact, enact labor reform. The board's call for labor reform in the three fiscal plans that are at issue in this appeal, the April plan, the May plan, and the June plan, were recommendations, and the legislature rejected those recommendations. The April fiscal plan was built on the assumption, the word assumption appears on the fiscal plan itself, that the legislature would enact labor reform, but the board in the April plan expressly acknowledged the possibility that it might not happen. And so the board included a contingency in the event that labor reform did not occur. The April plan described labor reform as the condition, which if it was met, would provide for a labor reform surplus that would fund other initiatives that the board deemed to be appropriate under its authority under PROMESA. If the condition was not met, the board expressly acknowledged that these reinvestment opportunities would not be made and would not be funded. By acknowledging the possibility that the legislature might not pass labor reform, the board could not be said to have been mandating labor reform. It was a request. But what was the result if the legislature didn't mandate labor reform, didn't do anything about labor reform, as they didn't? Then what was the corollary to that? What was the board supposed to do and what did the board do? Yes, Your Honor. Implicit in the April plan, based on the assumption that labor reform would be passed, the board made it clear that the April plan was premised on labor reform. If it did not happen, which is the hypothetical that the court has posed, the board would have to redo the plan and recut the numbers and allocate the available resources and revenues in a new way to account for the absence of growth that labor reform would have engendered. And it's your position that under PROMESA, that if labor reform did not occur, that the board was within its rights to impose its own plan in order to fill the void caused by the legislature's failure to enact a budget which PROMESA would approve? Almost, Your Honor. You said, I believe, the board could impose its own plan. And what I would suggest is that what actually happened here is that the board went through the process of attempting to engage with the governor under Section 201. And that process broke down over the course of May and June, which led to the board in late June doing what it said it would have to do in the event that the contingency occurred, which is that labor reform would not take place. But I'll add to that, Your Honor, when the board certified a plan on June 29th that took into consideration the absence of labor reform, the board certified that plan to the legislature and the governor on June 29th and invited the legislature and the governor, recognizing that time was now short, to submit a budget that was compliant with that June fiscal plan. One last chance. One last chance, Your Honor. And so when that was not taken up, it's your position that the board did what it was authorized to do, to approve a fiscal plan and budget? Precisely, Your Honor, and specifically on the budget, because the budget is what the plaintiffs are complaining about, and the budget is the only thing that the plaintiffs have standing to complain about, because under Section 201 of PROMESA, the legislature is not part of the development process for the fiscal plan. They are expressly part of and given a role in the development of the budget, but to bring us to June 29th and your question specifically, on that date, when the legislature and the governor failed to submit a compliant budget on June 30th in the determination of the oversight board, on that date, the oversight board is expressly authorized to create its own budget on June 30th. Under Section 202E3 of PROMESA, which is in fact precisely what the board did on June 30th, and under PROMESA, the board's budget on that date became the budget for the fiscal year 2019 period for Puerto Rico. As a result of that, what happened is the legislature has asked the district court to essentially replace the board's budget, which the board was authorized to certify under PROMESA, and replace its budget with the legislature's budget, which is expressly prohibited by the language in the Act itself, and because it goes specifically to a certification determination, which is a power reserved for the board exclusively, it violates 106E to challenge that certification determination by the board. The language of 106E actually refers to the district court not having jurisdiction. I take it no one has argued that we don't have jurisdiction to review whether the district court finding that 106E barred that claim, whether that is correct or not. Nobody has argued that, Your Honor. I would submit to the court that in this particular appeal, the court does not need to address that issue because the court merely needs to determine whether the district court properly dismissed the complaint. And so the district court properly concluded that it lacked jurisdiction under 106E to consider challenges to the board's certification determinations. Okay. Thank you. I take it that we also don't need to address the assumption made by the district court that 106E did not bar certain types of what I'll call ancillary claims, because the ancillary claims are not subject to the district court. That's precisely right, Your Honor. What I would say, however, is that the record makes abundantly clear, and as we have made clear in our brief, that to the extent that those claims were considered, they are without merit and fail to state a plausible claim. If I could, I'd like to raise a couple of points that are addressed in the reply briefs. The first point that the plaintiffs make in their reply brief that I'd like to address is the assertion that somehow the board punished the legislature by failing to repeal Law 80 by making deeper cuts to the legislature's budget. That argument fails based on the evidence in the record, and it's not a plausible claim that could be made in any way. First of all, the cuts that the legislature is referring to appear in the June fiscal plan compared to the April fiscal plan, and the legislature is not part of the development process for the fiscal plans, and those challenges go to the board's certification determinations on what is compliant with PROMESA. Secondly, the April fiscal plan was premised on a key assumption, that is, labor reform, that the June fiscal plan lacked, and therefore, of course, because the revenue that would be, in the board's view, generated by labor reform was not considered as part of the June fiscal plan, the board concluded, clearly, that it needed to achieve, the government needed to achieve additional savings. Your opponent says, look, we repealed Law 80 prospectively, and that goes to new employers coming in, and that should have been enough to satisfy the board. Well, there's two arguments in response to that, Your Honor. And I could provide the references in those plans, but they are clearly stated there that the board gave reasons and had a reasoned view as to why full repeal was needed. It also informs another point, Your Honor. The reason that Congress saw fit to eliminate the district court's jurisdiction over challenges to certification determinations is to avoid cases just like this, which would, number one, cause courts to have to adjudicate areas around budgeting and fiscal needs that are really within the board's expertise, and, number two, it would have the effect of bogging down, of delaying the process. Delaying and hindering the board from being able to achieve the goals and requirements that Congress had set for it. I'll make another point factually, which is important with respect to this issue of punitive behavior by the board, which lacks any foundation in the record. The cuts that the board, the board made deeper cuts in the June plan to the Puerto Rico government than it made in the April plan. That is clear. However, the board made deeper cuts across all of the agencies comparing April to June, except that the board for fiscal year 2019 did not deepen the cut that it had imposed on the courts and legislature in April versus June. It cut exactly the same amount that it said it would cut in 2019. And 2019 is the only thing that this court can focus on because we're only here about the 2019 budget. We are not here, and this appeal is not fairly about the fiscal plan in June of 2019. 2018, excuse me. You know, in a way, one understands the need to cut budgets, but in truth, many of the issues that percolate over to the federal courts actually start in the courts of Puerto Rico. And one wonders about their capacity to handle those claims and whether in some ways it's going to reduce the ability of the federal system to be responsive, to have them suffer under these handicaps. I have no doubt, Your Honor, that the board reads these transcripts carefully, and that type of information I'm confident will be considered. Thank you. Yes, thank you. Thank you, Your Honor. I want to make one last point, if I may. And this goes to an important factual component of the plaintiff's appeal. The plaintiffs do not allege that the legislature's June 30 budget was compliant with the June 29 fiscal plan. Mr. Mendez Nunez states in his opening brief that the legislature's budget complied with the May fiscal plan. That's in the brief at page 23. But the May fiscal plan was not operative on June 30, because on June 29, the Oversight Board certified a new fiscal plan. And to Judge Stahl's point earlier in the argument, this certification of a new fiscal plan could not have come as a surprise to the legislature or the governor. By June 29, the legislature had been aware for weeks that the May fiscal plan was going to be revised if the condition on which the plan was originally set was not fulfilled. And that was the repeal of Law 80. Counsel, of course, we have only the specifics of this particular case in front of us. But in writing an opinion, one always has to worry about the effects on possible future cases. Are there provisions in PROMESA vis-à-vis the board and the legislature where it would be clear that certain actions by the board would intrude too much on the prerogatives under the Constitution of Puerto Rico of the legislature? That's a very difficult question to answer, Your Honor. Yes, it is. And it may be that it can't be answered in the absence of specific facts. I feel constrained in my ability to answer the question in part because it involves almost a hypothetical question that without some concrete factual development... Well, I wouldn't want you to give an advisory opinion, nor will we do so. Not only would you not want it, I would be incapable. I'm not going to comment on that. With that, Your Honor, unless the court has other questions, I don't have further argument that I believe would be beneficial or useful to present to the court today. All right. Your opponents have two minutes. If they say something that catches you by surprise, I'll let you have two minutes later. Thank you. Thank you, Your Honor. Thank you. I'll leave it for the record. May I please record? Your Honor, I would like to address a few points placed by the court of counsel. The issue of standing. The legislature has standing that stems from the violations stemming from not following Section 201 because the budget will be measured against a validly approved plan under Section 201. If the plan was not approved pursuant to Section 201, then the budget could not be certified against a valid fiscal plan. Secondly, the reason why the legislature... I'm sorry. I don't understand the argument. I think we were just told that the legislature is given a role in the process for the budget but not the fiscal plan. Yes, Your Honor. Do you agree with that? Yes, Your Honor. But the fiscal plan has to be approved pursuant to PROMESA, pursuant to Section 201. Congress specifically excludes the legislature. Yes, Your Honor. Why would one assume that you have standing to attack the fiscal plan as opposed to the budget? Because the budget would be measured against the fiscal plan. Yes, I quite understand that. But you are saying that that position taken by counsel for the board would eliminate an argument you have about the budget? No, I'm just clarifying how the legislature has standing even though it does not participate in the development of a fiscal plan because, again, the budget that the legislature submits to the governor is approved has to be measured against a validly approved fiscal plan. No, part of your argument is that they didn't follow process. Exactly. All right. I didn't understand you to be making an argument that the budget doesn't comply with the fiscal plan. Is that an argument you made? No, Your Honor. I'm not making that argument. All right. I've questioned you. Is there anything else you need to say? Briefly, Your Honor, the reform was not passed because the board did not allow, when the memorandum of understanding required the board to approve the legislation before the legislation was enacted. The June 4th letter certainly did not give room for the legislature to act. It was all or nothing. On the other side, to replace the budget, to bring back the budget, the board could have followed what the May 30th plan at page 667 of the appendix states would happen if the proposed legislation on labor reform would not pass. It didn't say that the board would go and reinstate another plan or would revise the fiscal plan of May 30th. It says particularly that the allocations to the legislative assembly, the office of federal Puerto Rico office in Washington, the resident commissions and the judiciary would suffer cuts. That appears to be a fair notice argument. You're over your time, but do you have any other point you want to make? No, Your Honor. Thank you. Thank you. Counselor? No, Your Honor. Thank you. Thank you very much. We appreciate the importance of the case. Thank you.